Joseph CRISS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. A–17793.

Court of Criminal Appeals of Oklahoma.

March 6, 1973.

Robert S. Durbin, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

OPINION

BRETT, Judge:

Appellant, Joseph Criss, herein referred to as defendant, was convicted in the District Court of Tulsa County, Case No. CRF 71–2357, of Robbery with Firearms with punishment fixed at five years imprisonment. Judgment and sentence was imposed on May 22, 1972, and this appeal perfected therefrom. Affirmed.

The evidence established that on December 21, 1971, two men entered Allen's TV & Appliance Store in Tulsa, Oklahoma, at approximately 6:30 p. m. James Clark, the only employee on duty at that time, greeted the two men and recognized them as hav-

ing previously been in the store on December 19, 1971. Mr. Clark identified one of the men as the defendant. The other man was carrying a brown paper shopping sack out of which he pulled a pistol. The two men then directed Mr. Clark to the back room of the store, where he was tied and gagged. After Mr. Clark was left in the back room, he heard a commotion in the rear of the store. Subsequently, he was untied by his employer who was holding defendant's companion at gunpoint.

Officer Hudson testified that he was two blocks from the store when he was directed to the store pursuant to a police radio dispatcher's directive. Outside the back of the store the officer observed a man at the corner of the building near a fence, and another man at the rear of the store. According to the officer, he yelled at one of the subjects and threatened to release his police dog. As he moved in the subject crawled up on the hood of a car. The officer had conversation with the subject, described his apparel, and identified the subject as the defendant. However, as he lowered his gun to get the defendant off the hood of the car, defendant jumped the fence and escaped apprehension at that time.

For the defendant, C. H. Callahan testified that he was the desk clerk at the Central YMCA in Oklahoma City. Callahan testified that on the day in question, December 21, 1971, the defendant checked into the YMCA between the hours of 9:00 p. m. and 11:00 p. m., under the name of Robert Myers. Callahan particularly recalled defendant's checking into the YMCA because on the next day, December 22nd, he pointed defendant out to the police in the lobby of the YMCA.

Donald Edward Criss testified that he and the defendant had gone to Allen's TV Store on the 18th or 19th of December, but that they did not return to the store after that date.

The defendant testified that he left Tulsa at approximately 3:45 on the afternoon of December 21st by automobile, and ar-

rived at approximately 6:45 p. m. in Oklahoma City. According to the defendant, he then went to the YMCA where he checked in. Defendant admitted that he had been at Allen's TV Store previously, but denied being there on December 21st, the day in question. Defendant testified that he did not rob the store. On cross-examination, defendant testified that he had never made any statements regarding admitting the robbery in question.

John Davis testified that he was convicted of the crime in question, the robbery of James Clark at Allen's TV Store on December 21st, and further that no one was with him at the time that he committed the offense in question.

In rebuttal for the State, Officer Bayles testified that he interviewed the defendant on the morning of December 23rd. At this point in the trial, the defendant moved for, and the court granted, a non-jury hearing relative to the officer's conversation with defendant.

At the non-jury hearing, Officer Bayles testified that defendant admitted committing the robbery in question after being advised of his rights. Defendant testified that on the night of December 22nd, he was interrogated by several police officers who used brutal methods to extract information from him. Defendant related that on the following morning, December 23rd, at approximately 8:30, he had a conversation with Officer Bayles, but defendant denied admitting participation in the robbery at Allen's TV Store. Defendant's motion to suppress the officer's testimony concerning defendant's statement was overruled.

Officer Bayles then testified in presence of the jury that on December 23, 1971, he advised the defendant of his constitutional rights under the Miranda decision, and then interviewed the defendant during which time defendant admitted his participation in the robbery at Allen's TV Store. In surrebuttal defendant testified that on December 22nd he was interrogated, subjected to physical abuse, and denied counsel. Defendant denied that he was advised

of his rights, either by the officers on December 22nd, or by Officer Bayles on December 23rd.

On appeal defendant urges that the trial court erred in overruling his objection to the prosecutor's prejudicial statements during the closing argument; and further, that the trial court erred in failing to instruct the jury as to the purpose of the rebuttal testimony concerning defendant's incriminating statement to the officer.

■ Relative to the claim of improper argument, it appears that during the testimony of Mr. Clark, the victim of the robbery, he related that as he was tied up the defendant had stated that his [Clark's] family was under surveillance. Clark testified that after he was released from his ropes, he called his home. The prosecutor then asked why he had called home. Mr. Clark replied "To make sure that I knew that at the time I had a nine year old daughter at home by herself and this—." At this point the defense counsel's objection as to irrelevancy was sustained by the court, and the jury was admonished to disregard the statement.

During the closing argument the prosecutor was summarizing Mr. Clark's testimony and stated "He also told you how he cooperated because he didn't want his nine year old girl killed." Defense counsel then objected and the court replied, "That was in the evidence." Although the court had previously admonished the jury to disregard Mr. Clark's response as to why he had called home after the robbery, the fact that the defendant told Mr. Clark his house was under surveillance had been established. Considering the evidence as a whole, we do not think the prosecutor's remark here challenged by the defendant, was so improper as to substantially prejudice defendant. Accordingly, we find no error in this regard.

It is defendant's second contention that the trial court erred in failing to instruct the jury as to the purpose of the incriminating statement introduced against the defendant in rebuttal. Defendant argues that it is fundamental that a jury be advised that the incriminating statement introduced in rebuttal for the purpose of impeaching defendant's testimony requires a limiting instruction.

■ We find that the facts in this case are determinative of the question raised. It will be remembered that defendant's incriminating statement was allowed to go before the jury only after a non-jury hearing on the question of its admissibility. At such hearing the officer said defendant was fully advised of his rights before defendant made the statement. Defendant denied this and stated that he had been mistreated by the police the night before. The court had before it competent evidence from which it could conclude the statement was voluntary. Warren v. State, Okl.Cr., 495 P.2d 837. Furthermore, the statement was admitted only for the purpose of impeaching defendant's denial that he had admitted committing the robbery involved. Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Once the statement was admitted before the jury, defendant told the jury his story, including that he was mistreated and not advised of his rights. Lastly, defense counsel made no request for an instruction that the testimony about defendant's admission be considered only for the purposes of impeachment. In Hicks v. State, 93 Okl.Cr. 311, 227 P.2d 685 (1951), this Court held:

"Where a witness' written and signed statement is introduced into evidence by way of impeachment, and when such evidence is competent for that purpose, and where there is other evidence in the case which reasonably tends to support the verdict and where there is nothing in the record which tends to show that the jury regarded or considered such evidence in any other way than as impeaching testimony, this court will not reverse the case for that reason alone that the trial court did not instruct the jury to only consider such evidence as impeaching

testimony, no such instruction having been requested by the party against whom such testimony was offered."

Unquestionably, in the instant case, defendant was entitled to such an instruction, and it would be the better practice for the trial court to give such an instruction even if not requested. However, considering the factors enumerated above, and being pursuaded that the evidence of defendant's guilt is substantial, we conclude that it was not reversible error for the trial court to fail to give a limiting instruction when it was not requested by defendant. Such an omission, even without a request, under different circumstances might well require reversal.

Therefore, having considered defendant's assignments of error and finding them to be without merit, we conclude that the judgment and sentence should be, and the same is hereby,

Affirmed.

BLISS, P. J., concurs.

BUSSEY, J., concurs in result.